[Civ. No. 11076.   Second Appellate District, Division One.—November 12, 1936.]

ARTHUR STRASBURGER, Respondent, v. H. R. VAN DELINDER, County Treasurer, etc., Appellant.

Albert D. Barnes, District Attorney, and William T. Selby, Chief Deputy District Attorney, for Appellant.

Loren A. Butts for Respondent.

DESMOND, J., *pro tem.*—Appellant, Treasurer of Ventura County appeals from a judgment upon a *mandamus* proceeding, by which he was ordered to pay the respondent Strasburger, petitioner for the writ, "out of any and all money now on deposit or which may be hereafter deposited in his office in the 'Road District Improvement Interest and Sinking Fund No. 3' the total amount due the petitioner on five bonds issued by the Board of Supervisors of the County of Ventura, State of California, under and pursuant to the provisions of an act of the legislature of the State of California, known and designated as the Road District Improvement Act of 1907''. It is contended that the judgment is not supported by the evidence.

The cost of the road improvement ordered by the board of supervisors, approximately $110,000, was met by an issue of bonds numbered 1 to 110. Of these Strasburger is the owner of bonds numbered 1, 2, 3, 4 and 5, each in the amount of $1,000. His five bonds fell due as to principal on August 20, 1933, and were registered by appellant on that date, following presentment and request for registration preferred August 8, 1930. The court found on the evidence submitted that they were the first bonds actually presented and registered. Bonds 6 to 10 inclusive, it appeared from the testimony of appellant, were received a few days after August 20th, although with bond No. 11 they were given a registration date of August 20th. On that date there was in the district improvement fund the sum of $3,485.13 and respondent herein claims that from that money the amount due on three of his bonds should have been paid, and that the balance and the first money thereafter paid into the fund should have been utilized to pay the amount due upon his other two bonds. The county treasurer, however, took a contrary view and used money then and later in the fund to pay interest accruing on the bonds of this issue. On the date of trial there was in the fund $2,076.04.

The trial court by its judgment recognized the claim of the petitioner for the writ for priority in payment and, as we have noted, ordered payment "out of any and all money now on deposit or which may be hereafter deposited" in the fund.

The real question at issue is whether the court erred in ordering a payment in full to the petitioner, instead of ordering money in the fund to be prorated among the various holders of bonds and interest coupons. This question did not arise upon the pleadings, in which the substantial differences to be resolved between the said petitioner and the respondent thereto related to presentation and demand for payment, and which upon the evidence were all decided in favor of the respondent herein. Nor was there intervention by any other bondholder asserting a claim to a *pro rata* distribution. Appellant presents the question here upon the theory that as trustee of the fund raised by taxation upon property within the district, he is bound, in behalf of all those beneficially interested in the fund, namely, the bond and coupon holders, to resist the order of

full payment to one creditor. He recognizes that *mandamus* is a legal remedy but "contends that the court, in exercising the discretion granted to it in connection with the issuance of writs of mandate must be governed largely by equitable principles"; that "equality is equity", and that the trial court, by failing to observe this maxim, committed error. In making this argument, appellant relies strongly upon *Rohwer* v. *Gibson,* 126 Cal. App. 707 [14 Pac. (2d) 1051], where a writ of mandate issued directing a *pro rata* payment to bondholders presenting interest coupons. But the court in that opinion calls attention to another recent California case, *Bates* v. *McHenry,* 123 Cal. App. 81 [10 Pac. (2d) 1038], where payment was directed under a writ of mandate to be made "in full, of any and all interest coupons, in the order in which they were presented for payment". The bonds in the latter case were issued by an irrigation district; in the former by a reclamation district. "The holder of a bond issued by a reclamation district," says the court at page 719, *Rohwer* v. *Gibson, supra,* "has simply one fund raised, as we have stated, out of which he may expect payment, and the taxing power is limited and circumscribed, and cannot constitutionally go beyond the benefits conferred upon the land", while "the moneys raised to pay the indebtedness of an irrigation district depend upon an inexhaustible taxing power which may be continued from year to year until all outstanding obligations are discharged. Under the reclamation laws this is not the case." But it is the case, in our opinion, under the Road District Improvement Act of 1907 (Act 3276, sec. 26, p. 1589, Deering's Gen. Laws, 1931). Appellant does not deny that there is an unrestricted taxing power granted by that act, but contends that even though fully exercised, it does not, or would not result in the present case in an inexhaustible fund; therefore, that the court in an effort to do equity should have refused the writ. In support of this argument, we are cited to the opinion in *Morris, Mather & Co.* v. *Port of Astoria,* 141 Or. 251 [15 Pac. (2d) 385]. On examination of that opinion, we find that the court took judicial notice, under the laws of Oregon, of a condition of threatened, if not actual, municipal insolvency, and further, that an intervener, holding bonds or coupons equal in rank in every way with those of the plaintiff, asked not for payment in full, but for

payment *pro rata* on the ground that "There is no inexhaustible source from which intervener may enforce payment of the principal and interest now due it on bonds and interest coupons of said defendant." (15 Pac. [2d] 383, at 386.) No such pleading was filed in the instant case nor was any proof offered upon that subject.

The Road District Improvement Act provides in section 26 thereof that "The board of supervisors may annually, at the time of making the said tax levy, transfer from the general road fund of the county, or from the fund of the road district or districts in which the road improvement district is situated, to the road district improvement interest and sinking fund, such amount as in the judgment of the board should be transferred." (Deering's Gen. Laws, 1931, at p. 1590.) Here the legislature has provided for an auxiliary system of securing necessary funds for the payment of debts of the road improvement district, if and when the county supervisors decide that such a course is fair and wise. Since these bonds were issued by the county of Ventura for the purpose of constructing roads within that county, and since the supervisors have the power to replenish from the general county road fund a depleted road improvement fund, it may be that proper consideration of the principle of an inexhaustible taxing power or an inexhaustible source of funds would require inquiry not merely into the financial conditions of the district, but also of the county. However that may be, we believe that on the showing before the court, the issuance of the writ was justified. This upon the principle briefly stated in the annotation to *State* v. *City of Lakeland,* 112 Fla. 900 [150 So. 508], appearing in 90 Am. Law Rep., at page 724. This note calls attention to "a distinction drawn in some cases between a fund which represents the proceeds of an inexhaustible power of taxation, and a fund the sources of which are limited. (Cases.) . . . The idea underlying the distinction is that, where the fund out of which the obligations of the public body are to be paid is collected under an inexhaustible power of taxation, the payment in full of one creditor, though it may exhaust the fund, does not effect a preference in favor of such creditor to the prejudice of creditors unpaid, since, under such inexhaustible power of taxation, such a fund may be replenished until there is sufficient to pay all creditors

in full; and that, therefore, in such cases, the creditor who just attempts to assert his claim must be paid in full, although such payment leaves for the time being nothing for the other creditors.'' (Cases.)

■ Appellant complains because the trial court found ''that there is now on deposit in said special fund sufficient funds to pay the total amount due on said bonds'', while the testimony at the date of the trial indicated that the fund was approximately $3,000 short of the necessary amount. The findings were signed some little time after the hearing, and, of course, should reflect the condition shown by the evidence; however, the finding here is really on an immaterial matter. Under the decision of the court, the full amount is to be paid. If it is not on hand, then so much as is available in the fund shall be paid. We note that since this case was tried the legislature has passed an act providing that: ''When any bond or any interest coupon, payable from funds in the custody of the county treasurer, is presented to the treasurer for payment and is not paid for want of funds, the treasurer must indorse thereon 'Not paid for want of funds,' with the date of presentation and a serial number indicating the order of presentation and sign or stamp his name thereon. Such bonds and/or coupons, so indorsed and numbered, are entitled to preference as to payment out of the first moneys received in the treasury properly applicable to the payment thereof, in the order in which they were so presented and registered.'' (Stats. 1935, p. 994, sec. 1, chap. 280.)

The bonds belonging to this petitioner were the first of that series to be registered, and we believe observance of the order of the court will not do violence to the rights of others.

■ A final matter remains for disposition,—the request of appellant that we review the action of the trial court denying a motion for a new trial. At the hearing of that motion appellant offered to produce as evidence not available at the date of trial, statistics relating to the financial condition of the road district involved, including assessments and delinquencies for the improvement as well as for general taxes. It does not appear that any of the figures applicable to the situation up to the date of trial could not have been obtained prior to that time by the exercise of

reasonable diligence; therefore, as a sufficient ground for a new trial, the offer was bound to fail. No other grounds appearing to support the motion, it was in our opinion properly denied.

The judgment is affirmed.

York, Acting P. J., and Doran, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 11, 1937.